## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| DANIEL HENDERSON and DAVID HENDERSON, | No. 3:11-cv-01174 (MPS) |
| Plaintiffs, | |
| v. | |
| CITY OF MERIDEN and DEBORAH MOORE, | |
| Defendants. | |

### MEMORANDUM OF DECISION

Plaintiffs Daniel and David Henderson bring this action alleging violations of their constitutional rights and breach of contract by Defendants the City of Meriden (the "City") and City Attorney Deborah Moore ("Attorney Moore") concerning a Stipulated Judgment entered in a Connecticut State Court action.   Pending before the Court are Defendants' Motion for Summary Judgment [Dkt. # 90] and several motions filed by Plaintiffs, including:  (1) a "Motion to Terminate the 10-Sep-09 Covenant" [Dkt. # 74]; (2) a Motion to Amend the Operative Complaint [Dkt. # 93]; (3) a Motion for Oral Argument on Defendants' Motion for Summary Judgment [Dkt. # 94]; and (4) a second Motion to Amend the Operative Complaint [Dkt. # 95].

Plaintiffs' constitutional claims fail because Plaintiffs have failed to offer any evidence that Attorney Moore had personal involvement in the alleged unconstitutional conduct or that the alleged unconstitutional conduct was caused by an official policy or custom of the City. Plaintiffs' breach of contract claim against Attorney Moore fails because there is no evidence that Attorney Moore was a party to the Stipulated Judgment.  Although the Court finds a genuine issue of material fact regarding whether the City is bound by the Stipulated Judgment, the Court declines to exercise supplemental jurisdiction over Plaintiffs' breach of contract claim against the

City.  Therefore, as discussed further below, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiffs' constitutional claims and the breach of contract claim against Attorney Moore, DENIES Defendants' Motion for Summary Judgment on Plaintiffs' breach of contract claim against the City, DENIES Plaintiffs' various motions, and DISMISSES this action under 28 U.S.C. § 1367(c)(3).

## I.   Background

### A.   Factual Background

#### i.   Nuisance Action in Connecticut Superior Court

On April 30, 2009, the State of Connecticut brought a nuisance abatement action (the "Nuisance Action") against David Henderson, Daniel Henderson, Laura Kuhl, Cityscape Real Estate Holding, Inc., and the Real Property Known as 2041 North Broad Street, Meriden, Connecticut, also known as "2041 Club" (collectively, the "Nuisance Defendants").  (Compl. ¶¶ 1-6, *Connecticut v. Henderson*, Dkt. No. NNI-CV-09-4011479S (Conn. Super. Ct. Apr. 30, 2009), Ex. A to Defs.' Local Rule 56(a)1 Statement [Dkt. # 90-3].)  In that action, the State alleged that a commercial business known as the "2041 Club" located at 2041 North Broad Street, Meriden, Connecticut (hereinafter, the "Property") was being used for illegal activities, including prostitution, and that it constituted a public nuisance under Conn. Gen. Stat. § 19a-343, *et seq.*  (*Id.* Count One, ¶¶ 5, 31.)  Further, the State alleged that the Nuisance Defendants were creating or maintaining a public nuisance "in that they maintained, used, owned or leased" the "2041 Club" for illegal activities, including prostitution.  (*Id.* Count One, ¶ 32.)  Among other relief, the State sought a permanent injunction barring the Nuisance Defendants from "utilizing, maintaining, owning, permitting, and carrying on" at the "2041 Club."  (*Id.* Prayer for Relief.)

On September 10, 2009, the State and the Nuisance Defendants resolved the Nuisance Action through a stipulated judgment (hereinafter, the "Stipulated Judgment").  (Stipulated J., Ex. C to Defs.' Local Rule 56(a)1 Statement.)  The Stipulated Judgment provided that the "2041 Club" would remain closed and that the Nuisance Defendants would be barred from "owning, entering onto the subject property or operating any business or profiting from any business in any capacity at 2041 North Broad Street, Meriden, Connecticut."  (*Id.* ¶¶ 2-3.)  The Stipulated Judgment also provided the terms by which the "2041 Club" could be conveyed.  Specifically, the "2041 Club" could be conveyed via warranty deed "to a good faith purchaser for value, in an arms length [sic] transaction, who has been pre-approved by the Division of Criminal Justice." (*Id.* ¶ 4.)  The Stipulated Judgment also included the following provision:

> In the event that a term or terms of this Stipulation conflict with current or future statutes, ordinances, zoning and licensing laws of the State of Connecticut and/or the City of Meriden, the conflicting term or terms shall be superceded by that statute, ordinance, zoning or licensing law.

(*Id.* ¶ 8.)  This provision, however, was crossed out in the signed copy of the Stipulated Judgment.  Finally, the Stipulated Judgment provided that the Connecticut Superior Court "shall retain jurisdiction of this matter for the purpose of enforcing the terms of the Judgment and for addressing any other matters which may arise related to this action."  (*Id.* ¶ 13.)

The Nuisance Defendants, including David and Daniel Henderson, signed the Stipulated Judgment, and Senior Assistant State's Attorney Ilana Cathcart signed the Stipulated Judgment on behalf of the State.  (*Id.* at 7.)  Neither the City nor any of its representatives, including Attorney Moore, signed the Stipulated Judgment.  (*Id.*; *see also* D. Moore Aff. ¶¶ 7-8, Ex. B to Defs. Local Rule 56(a)1 Statement.)  Plaintiffs have introduced evidence, however, that Attorney Moore, on behalf of the City, agreed that the City would be bound by the Stipulated Judgment.

(*See* L. Touma Aff., as Ex. B to Pls.' Mot. for Oral Argument [Dkt. # 94]; D. McManus Aff., Ex. C to Pls.' Mot. for Oral Argument.)[1] This evidence is discussed further below.

### ii.   Sale of the "2041 Club"

In accordance with the Stipulated Judgment, the State allowed Plaintiffs to sell the Property, which includes the "2041 Club," to Jesse Daenekindt by warranty deed dated October 16, 2009.  (D. Moore Aff. ¶¶ 10-11.)  The warranty deed specifies that it is subject to "[a]ny and all provisions of any municipal ordinance or regulations, and any Federal, State, or local public or private laws, with special reference to the provisions of any zoning and regulations governing the subject premises."  (Warranty Deed, Ex. E to Defs.' Local Rule 56(a)1 Statement.)

### iii.   Zoning of the "2041 Club"

Neither Plaintiffs nor Mr. Daenekindt contacted the City of Meriden Zoning Department regarding the usage or zoning of the Property prior to its sale.  (J. Anderson Aff. ¶ 16, Ex. F to Defs.' Local Rule 56(a)1 Statement.)  Plaintiffs have introduced evidence, however, that before the sale of the Property, Mr. Daenekindt contacted Attorney Moore and informed her of his intention to purchase and operate "2041 Club" as an adult business, and that Attorney Moore "pre-approved [him] at separate times to purchase, open and operate 2041's Adult usage."  (J. Daenekindt Aff., Ex. D to Daniel Henderson's Opp'n to Summ. J.)

---

[1] Plaintiffs separately filed two memoranda in opposition to Defendants' Motion for Summary Judgment.  Plaintiff David Henderson's memorandum is dated February 19, 2013.  (*See* David Henderson's Opp'n to Summ. J. [Dkt. # 91].)   Plaintiff Daniel Henderson's memorandum is dated February 28, 2013 and is attached to Plaintiffs' Motion for Oral Argument.  (*See* Pls.' Mot. for Oral Argument.)   Although Plaintiff Daniel Henderson's memorandum is improperly attached to another motion, and the evidence attached to that memorandum does not properly conform with Local Rule 56(a)(2), the Court has nevertheless considered those materials in reaching its decision.  *See Kim v. Columbia Univ.*, 487 Fed. App'x 600, 602 (2d Cir. 2012) (noting that courts "construe the filings of pro se litigants liberally").

After purchasing the Property, Mr. Daenekindt delivered a letter to Jim Anderson, Zoning Enforcement Officer for the City of Meriden, stating his intention to open an adult entertainment venue at the Property.  (Mar. 12, 2010 Letter, Ex. K to Defs.' Local Rule 56(a)1 Statement.)  Mr. Daenekindt stated in his letter that "the States [sic] Attorney advised me there is no court or statutory prohibition for this use at this site."  (*Id.*)  At the time of delivery of the letter, Mr. Anderson informed Mr. Daenekindt that adult entertainment at the Property was not allowed and that Mr. Daenekindt must apply for a special exemption.  (J. Anderson Aff. ¶ 18.)  Mr. Anderson memorialized that conversation in a handwritten note on the March 12, 2010 Letter.  (Mar. 12, 2010 Letter.)

On April 1, 2010, Mr. Daenekindt applied for a special exemption to have the Property approved for adult entertainment.  (Apr. 1, 2010 Appl., Ex. L to Defs.' Local Rule 56(a)1 Statement.)  After three hearings, the City of Meriden Zoning Board of Appeals denied Mr. Daenekindt's request to have the Property zoned for adult entertainment.  (J. Anderson Aff. ¶¶ 22-26; July 8, 2010 Decision of Zoning Board of Appeals, Ex. Q to Defs.' Local Rule 56(a)1 Statement.)  Mr. Daenekindt did not appeal the decision to the Connecticut Superior Court.  (J. Anderson Aff. ¶ 32.)

### iv. Plaintiffs' Attempts to Enforce the Stipulated Judgment in Connecticut State Court

On June 6, 2011, following the sale of the Property and the July 8, 2010 decision of the City of Meriden Zoning Board of Appeals, Daniel Henderson filed a motion in Connecticut Superior Court to enforce the Stipulated Judgment against the City.  (Mot. for Order, *Connecticut v. Henderson*, NNI-CV09-4011479-S (Conn. Super. Ct. June 6, 2011), Dkt.

#124.00.)[2]   In that motion, Daniel Henderson argued that Attorney Moore had agreed to be bound by the terms of the Stipulated Judgment, that Attorney Moore had approved Mr. Daenekindt to purchase and operate the "2041 Club" as an adult business, and that the denial of Mr. Daenekindt's right to do so violated the Stipulated Judgment.  (*Id.* at 1-2.)  On July 14, 2011, the court (Markle, J.) denied the motion without a written decision, noting only that Defendant "had no standing to pursue such a motion."  *Connecticut v. Henderson*, 140 Conn. App. 672, 675 (2013).[3]

Daniel Henderson then appealed to the Connecticut Appellate Court, arguing that the Superior Court decision should be reversed because the City was bound by the Stipulated Judgment.  *Id.* at 675.  The Appellate Court affirmed the decision and held that "[t]he record does not substantiate the defendant's present allegation that the city was in any way bound by the terms of the stipulated judgment between the state and the Hendersons."  *Id*.  The Appellate Court noted that the City did not formally appear at the hearing at which the Stipulated Judgment was entered, there was no reference to the City in the hearing transcript, and the trial judge at the hearing "meticulously canvassed the parties that had agreed to be bound by the stipulated judgment," but never canvassed the City.  *Id.* at 676.  The Appellate Court held that reversal of the Superior Court's decision "would require a demonstration that the city was bound by the terms of a contract to which it was not a party and to which it did not, in any other way, manifest

---

[2] *See City of New Haven v. Ins. Co. of the State of Pa.*, No. 3:10-cv-02047 (JCH), 2012 U.S. Dist. LEXIS 31425, at *3 n.2 (D. Conn. Mar. 8, 2012) ("This court takes judicial notice of the docket entries in the underlying state court actions.").

[3] *See Vega v. Lantz*, No. 3:04-cv-1215(DFM), 2006 U.S. Dist. LEXIS 69120, at *14 (D. Conn. Sept. 26, 2006) (taking judicial notice of a state court decision).

its assent." *Id.*  Unaware of any authority permitting such an outcome, the Appellate Court affirmed the trial court's decision.  *Id.*

Following Judge Markel's denial of the motion to enforce the Stipulated Judgment, but prior to appealing that decision, Daniel Henderson, David Henderson, and Mr. Daenekindt commenced a new action in Connecticut Superior Court against the State of Connecticut, Senior Assistant State's Attorney Cathcart, the City, and Attorney Moore.  *See Henderson v. Connecticut*, NNH-CV11-5033994-S (Conn. Super. Ct. Oct. 4, 2011).[4]  In that action, the plaintiffs sought only equitable relief, namely, an order requiring that the City allow Mr. Daenekindt to operate the "2041 Club" as an adult business.  (*See* Hr'g Tr. at 104, *Henderson v. Connecticut*, NNH-CV11-5033994-S (Conn. Super. Ct. June 27, 2012), Ex. H to Daniel Henderson's Opp'n to Summ. J.)  The plaintiffs unequivocally waived any claim to money damages.  (*Id.* at 105.)  Prior to a decision on the merits, the plaintiffs withdrew that action on March 11, 2013.  (Withdrawal, *Henderson v. Connecticut*, NNH-CV11-5033994-S (Conn. Super. Ct. March 11, 2013), Dkt. # 204.00.)

> **B.  Commencement of this Action**

Plaintiffs[5] commenced this action against the City, Attorney Moore, Edward Jones, Chairman of the City of Meriden Zoning Board of Appeals, and Jim Anderson, Zoning Enforcement Officer for the City of Meriden.  (Compl. [Dkt. # 1] at 1.)  Plaintiffs asserted claims under 42 U.S.C. § 1983 for (1) deprivation of property without just compensation in

---

[4] Plaintiffs filed *Henderson v. Connecticut*, NNH-CV11-5033994-S (Conn. Super. Ct. Oct. 4, 2011) *after* they commenced this action.

[5] On February 21, 2012, the Court granted Plaintiff Daniel Henderson's motion to add David Henderson as a plaintiff.  (Feb. 21, 2012 Order [Dkt. # 46].)  The Court denied Plaintiffs' motion to add Mr. Daenekindt as a plaintiff.  (Feb. 29, 2012 Order [Dkt. # 49].)

violation of the 5th Amendment; (2) deprivation of due process under the 14th Amendment; and (3) violation of the Equal Protection Clause under the 14th Amendment. (*Id.* at 6.)  Plaintiffs also asserted claims for breach of contract and negligence. (*Id.* at 6.)  By way of an amended complaint, Plaintiffs later withdrew their negligence claim and their claims against Messrs. Jones and Anderson. (*See* Second Am. Compl. [Dkt. # 17] at 1.)

Plaintiffs allege as follows.  The City and Attorney Moore "reviewed, modified, and agreed to" the Stipulated Judgment, which "preserves the adult usage right at '2041' to continue regardless of any changes to statutes, ordinances, zoning, and/or licensing laws by the State and/or City of Meriden." (*Id.* at 3 (alterations to formatting).)  Based on "said 2009 Agreement," Plaintiffs represented to a potential buyer that future owners "would maintain full rights to [the 2041 Club's] adult usage…." (*Id.* at 4 (alterations to formatting).)  That buyer, Mr. Daenekindt, then contacted Attorney Moore and Senior Assistant State's Attorney Cathcart stating his intent to purchase the Property "and open an adult business." (*Id.* (alterations to formatting).)  After an investigation of Mr. Daenekindt "by the City of Meriden and/or State of Connecticut, he was approved to purchase and open an adult business at '2041'." (*Id.* (alterations to formatting).)  Thereafter, on October 16, 2009, Mr. Daenekindt purchased the Property. (*Id.*)  After the sale, however, Defendants declared "2041's valid non-conforming adult usage, 'illegal'…." (*Id.* (alterations to formatting).)  As a result, Mr. Daenekindt withheld payment on the sale of the Property and claimed that Plaintiffs were liable to him for damages arising from a misrepresentation about adult usage of the Property. (*Id.* at 5.)

Based on these allegations, Plaintiffs contend that Defendants denied them their constitutional rights and breached a contract, namely, the Stipulated Judgment.  Plaintiffs request the following relief:  (1) a declaration that "2041 Club" has a valid non-conforming adult usage

classification, that the Stipulated Judgment is void, and that Defendants must indemnify Plaintiffs for any damages arising from the alleged misconduct; (2) an injunction barring Defendants from restraining "2041 Club's" valid non-conforming adult usage, interfering, harassing, or retaliating against Plaintiffs, "2041 Club," its owners/operators, and customers; (3) compensatory damages in the amount of $500,000.00; and (4) punitive damages in the amount of $100,000.00.  (*Id*. at 6-7.)

## II.    Discussion

Because the Court's decision on Defendants' Motion for Summary Judgment affects its consideration of the other pending motions, the Court will address that motion first.

### A.    Defendants' Motion for Summary Judgment

Defendants have moved for summary judgment on the following grounds: (1) Plaintiffs lack standing; (2) Plaintiffs' constitutional claims against Attorney Moore fail because they have not shown that she was personally involved in the alleged unconstitutional conduct; (3) Plaintiffs cannot establish a claim for deprivation of substantive due process; (4) Plaintiffs cannot establish a claim for unconstitutional taking of private property without due process; (5) Plaintiffs cannot establish a violation of the Equal Protection Clause; (6) Plaintiffs' breach of contract claim fails because Defendants were not parties to the Stipulated Judgment; (7) Attorney Moore is protected from the constitutional claims by qualified immunity; and (8) the City cannot be held liable for any constitutional claims because there is no evidence of a custom or practice giving rise to the alleged constitutional violations.  (Defs.' Mot. for Summ. J.)

#### i.    Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The moving parties – here, the City and Attorney Moore – bear the burden of demonstrating that no genuine issue exists as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

### ii.     Plaintiffs Have Standing

The Court must first consider Defendants' argument that Plaintiffs lack standing, and that the Court therefore lacks subject matter jurisdiction.  *See United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." (internal quotation marks omitted)).

"Article III, Section 2 of the Constitution limits the subject matter jurisdiction of the federal courts to the resolution of cases and controversies." *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 228 (2d Cir. 2012) (internal quotation marks omitted).  To ensure that the case or controversy requirement is met, "courts require that plaintiffs establish their standing as the proper parties to bring suit." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (internal quotation marks omitted).  To establish standing, a plaintiff must demonstrate: "(1) *injury-in-fact*, which is a concrete and particularized harm to a legally protected interest; (2)

*causation*, in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (internal quotation marks omitted and emphasis in original).

Defendants argue that Plaintiffs lack standing because they "do not have any property ownership rights in the '2041 Club,'" and therefore cannot assert any claims regarding that property. (Defs.' Mem. of Law In Supp. of Mot. for Summ. J. [Dkt. No. 90-1] at 11 (hereinafter, "Defs.' Br.).) The Court disagrees. Plaintiffs have an equitable interest in the Property even if they do not hold formal title to it. Plaintiffs have submitted two promissory notes documenting promises by Mr. Daenekindt to pay Plaintiffs a total of $500,000 as part of the sale of the "2041 Club." (Attachs. F, G to Pls.' Mot. for Oral Argument.) Plaintiffs allege – and Defendants do not rebut – that Mr. Daenekindt has refused to fulfill the promissory notes and pay the $500,000 until Defendants declare adult usage of the "2041 Club" legal. (Second Am. Compl. at 5 ( "Plaintiff received notice from 2041's pre-approved buyer, Mr. Daenekindt … that all monies owed for the sale of 2041's adult business and lien, are withheld unless and until said usage is declared (il)legal.").) Even though Mr. Daenekindt holds title to the Property, Plaintiffs have an equitable interest in it because the sale has not been completed and they have not yet been paid. *See Weis-Buy Farms, Inc. v. Quality Stores LLC*, No. 3:11-cv-02011 (MRK)(WIG), 2012 U.S. Dist. LEXIS 11178, at *27 (D. Conn. Jan. 31, 2012) (noting that a "seller retains an equitable interest in the … property pending payment."); *Estate of Knight v. Amalfi*, No. 2117806, 2009 Conn. Super. LEXIS 3392, at *7 (Conn. Super. Ct. Dec. 18, 2009) (holding that sellers retained an equitable interest in property where the sale agreement was only partly performed); *see also*

11

*Kelly v. Kelly*, No. FA084040118, 2009 Conn. Super. LEXIS 2852, at *27 (Conn. Super. Ct. Oct. 23, 2009) (noting in a divorce action, that a party can have an equitable interest in the proceeds from the sale of property even if he does not hold title to that property).  Further, Plaintiffs have alleged facts indicating that Defendants have harmed their equitable interest in the Property by, in effect, interfering with their ability to collect the proceeds from the sale of the Property, and Defendants do not dispute that the buyer of the Property will not pay the sale proceeds until the City declares that it may be used as an adult business.  All this is enough to establish that the Plaintiffs have been injured by Defendants' conduct, and that is all the doctrine of standing requires.[6]

### iii.    Plaintiffs' Constitutional Claims Against Attorney Moore

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Gronkowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005) ("Before § 1983 damages are awarded, a plaintiff must show by a preponderance of the evidence that the defendant was personally involved – that is, he directly participated – in the alleged constitutional deprivations.")  "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting

---

[6] Plaintiffs argue that Defendants are collaterally estopped from contesting standing because the Connecticut Superior Court found that Plaintiffs had standing in the related state-court action.  (Daniel Henderson's Opp'n to Summ. J. at 5.)  Plaintiffs' argument misinterprets the law.  Standing in state court is not binding on a federal court.  *See United States ex rel. Daneff v. Henderson*, 501 F.2d 1180, 1183 (2d Cir. 1974) ("state-court determinations of standing are not binding on the lower federal courts"); *see also Coleman v. Miller*, 307 U.S. 433, 466 (1939) ("[I]t by no means follows that a state court ruling of the adequacy of legal interest is binding here.").

a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).[7]

Defendants argue that Attorney Moore cannot be held liable for any of the alleged constitutional violations because she was not personally involved in the alleged breach of the Stipulated Judgment. (Defs.' Br. at 17.)  The Court agrees.  Even assuming that Attorney Moore is bound by the Stipulated Judgment, there is no evidence that she had personal or direct involvement in the zoning decisions concerning the "2041 Club" or the Property.  Rather, the evidence demonstrates that Jim Anderson, Zoning Enforcement Officer for the City of Meriden, made the determination that the Property was not zoned for adult use, and the City of Meriden Zoning Board of Appeals denied Mr. Daenekindt's application for an exemption.  It is that conduct – the zoning decisions by Mr. Anderson and the Zoning Board of Appeals – that constitutes the alleged breach and forms the basis for the constitutional claims.  Because there is no evidence that Attorney Moore was involved in the zoning decisions, Plaintiffs cannot establish their constitutional claims against her.  The Court therefore GRANTS summary judgment to Attorney Moore on the constitutional claims against her.

### iv.    Plaintiffs' Constitutional Claims Against the City

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. NYC Dep't of Soc. Servs.*, 436 U.S. 658 (1978)) (emphasis in original).  "It is only when the execution of the government's policy or custom inflicts injury that the

---

[7] Although personal involvement also can be found without direct participation if the defendant occupies a supervisory position, *see Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), Plaintiffs do not allege or offer any evidence to support a finding that Attorney Moore acted in any supervisory capacity with respect to Mr. Anderson, Zoning Enforcement Officer, or the City of Meriden Zoning Board of Appeals.

municipality may be held liable under § 1983." *Id.* (internal quotations and citations omitted). Moreover, there must be "a direct causal link" between the alleged constitutional violation and the policy or custom. *Id.* "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).

Defendants contend that Plaintiffs fail to allege or offer evidence to support a finding that the alleged constitutional violations were caused by an official policy or custom of the City. The Court agrees. There is no evidence in the record to suggest that the zoning decisions made concerning the "2041 Club" and the Property arose from any official policy or custom. Indeed, there are no allegations of an official policy or custom. Accordingly, Plaintiffs' constitutional claims against the City fail. The Court therefore GRANTS summary judgment to the City on the constitutional claims against it.

### v.     Plaintiffs' Breach of Contract Claim

Defendants argue that Plaintiffs' breach of contract claim fails because (1) the evidence demonstrates that neither the City nor Attorney Moore was a party to or is bound by the Stipulated Judgment, and (2) collateral estoppel bars the claim because the Connecticut Appellate Court has already ruled that Defendants are not bound by the Stipulated Judgment. (Defs.' Br. at 33; Defs.' Reply in Supp. of Summ. J. [Dkt. # 90-1] at 3.)

### a.     Factual Dispute as to Whether the City Is Bound by the Stipulated Judgment

The Court analyzes Plaintiffs' state law breach of contract claim under Connecticut law. In Connecticut, "[t]he elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Am. Express Centurion Bank v. Head*, 115 Conn. App. 10, 15-16 (2009); *see United Mine Workers v.*

*Gibbs*, 383 U.S. 715, 726 (1966) (noting that a federal court is "bound to apply state law" to state law claims).  "[A]s a general rule, an action for breach of contract may not be maintained against a person who is not a party to the contract."  *FCM Grp., Inc. v. Miller*, 300 Conn. 774, 798 (2011).

Defendants contend that because they did not sign the Stipulated Judgment or participate in the hearing at which the Connecticut Superior Court accepted and entered the Stipulated Judgment, they are not parties to it and are not bound by it.  (Defs.' Br. at 33.)  The Court finds that there is a genuine issue of material fact regarding whether the City is bound by the Stipulated Judgment.

Although Plaintiffs do not dispute that neither Attorney Moore nor any other representative of the City signed the Stipulated Judgment or participated in the hearing, Plaintiffs offer evidence that Attorney Moore nevertheless agreed that the City would be bound by its terms.  Plaintiffs submit an affidavit by Donna McManus stating that, on the date the Stipulated Judgment was entered, she witnessed a conversation between "Daniel Henderson, David Henderson, the states [sic] attorney, and the Meriden City attorney" about the sale of the Property and its use as an adult business.  (D. McManus Aff.)  Ms. McManus describes the conversation as follows:

> Daniel Henderson at one point asked why the city attorney had not signed the agreement and the other person (states [sic] attorney [ )] said her signature was valid for this agreement; the (states [sic] attorney) was the representative for the city also.  Everyone was in agreement.

(*Id.*)  Ms. McManus's affidavit states that "Everyone" – which includes Attorney Moore, who Ms. McManus claims participated in the conversation – "was in agreement" that Senior State's Attorney Cathcart signed the Stipulated Judgment on behalf of the City as well as the State. Plaintiffs have thus raised a genuine issue of material fact as to whether the City – through

Attorney Moore – agreed to be bound by the Stipulated Judgment.  Plaintiffs have failed, however, to offer any evidence that Attorney Moore agreed on her own behalf to be bound by the Stipulated Judgment; the above-quoted sworn statement suggests only that there was an agreement that the City be bound.  Because there is no evidence that Attorney Moore agreed to be personally bound, the Court GRANTS summary judgment to her on the breach of contract claim.

### b.    Collateral Estoppel

Defendants also contend that the doctrine of collateral estoppel bars Plaintiffs' breach of contract claim because the Connecticut Appellate Court has already ruled that the City is not bound by the Stipulated Judgment.  The Court disagrees, however, and finds that collateral estoppel does not bar Plaintiffs' breach of contract claim against the City under the circumstances of this case.

"Under Connecticut law, collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action." *New Eng. Estates, LLC v. Town of Branford*, 294 Conn. 817, 838 (2010).[8]  Collateral estoppel applies when: (1) the identical issue was raised in a previous proceeding; (2) the issue was fully and fairly litigated in the first action; (3) the issue was determined by a valid and final judgment; and (4) that determination was essential to the judgment.  *Gladysz v. Planning & Zoning Comm'n*, 256 Conn. 249, 260 (2001).  The Connecticut Supreme Court, however, has cautioned

---

[8]"Under 28 U.S.C. § 1738, [the federal court] must give state court judgments whatever preclusive effect the courts of that state would give them."  *Ashmore v. Prus*, No. 12-2760-cv, 2013 U.S. App. LEXIS 2156, at *3 (2d Cir. Jan. 31, 2013).  A federal court determines the preclusive effect of a state court judgment under the law of that state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[T]he preclusive effect in federal court of petitioner's state-court judgment is determined by [state law]."); *Marvel Characters v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("We apply … New York law in determining the preclusive effect of a New York State court judgment...." (internal citations omitted)).

against a mechanical application of these elements.   "[T]he application of [the collateral estoppel] doctrine has dramatic consequences for the party against whom it is applied, and … [courts] should be careful that the effect of the doctrine does not work an injustice."  *Powell v. Infinity Ins. Co.*, 282 Conn. 594, 602 (2007) (internal quotation marks and citations omitted); *Corcoran v. Dep't of Soc. Servs.*, 271 Conn. 679, 697 (2004) ("The application of collateral estoppel should be flexible and must give way when its mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (brackets omitted)).  The court called the doctrine of collateral estoppel a "judicially created rule[] of reason that [is] enforced on public policy grounds," and held that the decision "whether to apply [the] doctrine in any particular case should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close and the competing interest of the plaintiff in the vindication of a just claim."  *Powell*, 282 Conn. at 601 (internal quotation marks, citations, and ellipsis omitted).

These principles militate against a finding that Plaintiffs are precluded from pressing their breach of contract claim against the City.  First, it is not clear that the issue of whether the City is bound by the Stipulated Judgment was "fully and fairly litigated" in the state court proceedings. There would have been no reason to litigate this issue at all when the Stipulated Judgment was actually entered, because the Plaintiffs assumed – based on the statements of the State's Attorney and Attorney Moore recounted in the McManus Affidavit – that the City had agreed to be bound. As for the proceedings on Plaintiff Daniel Henderson's motion to enforce the Stipulated Judgment, it is not clear whether Mr. Henderson had an opportunity to submit that affidavit, or any other evidence outside the record of the original proceeding that resulted in the Stipulated

17

Judgment, to the state trial court, and that court, in any event, held no evidentiary hearing and did not reach the merits, finding only that Daniel Henderson lacked standing. *See Connecticut v. Henderson*, 140 Conn. App. at 675 (noting that the court denied the motion without a written decision on the grounds that Daniel Henderson "had no standing to pursue such a motion"); (Order Denying Motion for Immediate Hearing, *Henderson*, NNI-CV09-4011479-S (Conn. Super. Ct. July 14, 2011.), Dkt. # 126.00).   The Connecticut Appellate Court's review was necessarily "limited to matters in the record," *Litwin v. Ryan*, 131 Conn. App. 558, 566 n.10 (2011) (citing *DiGiovanna v. St. George*, 300 Conn. 59, 95 (2011)), and it does not appear that the McManus Affidavit was part of that record.   Had it been part of the appellate record, it is unlikely that the Appellate Court would have omitted any mention of it in concluding that Mr. Henderson had failed to demonstrate "that the city was bound by the terms of a contract to which it was not a party and *to which it did not, in any other way, manifest its assent.*"   *Henderson*, 140 Conn. App. at 676 (emphasis added).   Defendants have offered no evidence suggesting that the McManus Affidavit was before the Connecticut state courts or, if it was, that Plaintiffs received a "full and fair opportunity" to litigate the facts set forth in that affidavit in the narrow context of the motion to enforce the Stipulated Judgment.   Connecticut courts have refused to apply collateral estoppel under similar circumstances.   *See Connecticut v. McDowell*, 242 Conn. 648, 651 (1997) (concluding that collateral estoppel did not apply to bar the State from bringing criminal charges against a defendant despite the fact that factual issues relevant to the criminal trial were addressed at a probation revocation hearing because "the state lacked the incentive to present its best evidence at that hearing"); *Marshall v. Marshall*, No. FSTFA074012382S, 2008 Conn. Super. LEXIS 1423, at *6 (Conn. Super. Ct. June 4, 2008) (holding that "since the plaintiff was not required to present all of the evidence ... at the preliminary injunction stage, and

collateral estoppel requires a prior judgment that was fully and fairly litigated, the issue is not barred by collateral estoppel"); *see also Powell*, 282 Conn. at 603 ("In establishing exceptions to the general application of the preclusion doctrines [of res judicata and collateral estoppel], we have identified several factors to consider, including … (3) whether the opportunity to litigate the claim or issue differs as between the two forums ….").

Further, "the competing interest of the plaintiff in the vindication of a just claim" – one of the underlying policies the Court must consider in deciding whether to apply collateral estoppel, *id.* at 601 – weighs heavily in this case.  Construing the evidence in the light most favorable to Plaintiffs, and drawing all reasonable inferences and resolving all ambiguities in their favor, *see Lasalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005), the Court views the facts as follows:  Plaintiffs negotiated an agreement with the State, to which the City agreed to be bound, that allowed them to sell the Property to a buyer approved by the State; Plaintiffs identified a buyer and obtained the State's approval of that buyer; and Plaintiffs negotiated an agreement to sell the Property to the buyer and obtained the City's permission (through Attorney Moore) that the buyer could use the property as an adult business.  After Plaintiffs transferred title but before they received the full purchase price, however, the City's Zoning Board informed the buyer that he could not use the Property for that purpose, and the buyer withheld the remaining sale proceeds from the Plaintiffs.  In other words, the City reneged on a promise to the Plaintiffs, and the Plaintiffs have lost substantial sums as a result.  As far as the Court can tell, Plaintiffs have never had the chance to prove this claim in court.  Under these circumstances, it would be inequitable to invoke collateral estoppel – a doctrine "whose

crowning consideration is fairness," *Coyle Crete, LLC v. Nevins*, 137 Conn. App. 540, 556 (2012) (internal quotation marks omitted) – to bar them from doing so.[9]

Plaintiffs have offered sufficient evidence to raise a genuine issue of material fact as to whether the City is bound by the Stipulated Judgment, and Defendants have failed to demonstrate that the Court should apply collateral estoppel in this case.  Defendants' Motion for Summary Judgment is therefore DENIED with respect to Plaintiffs' breach of contract claim against the City.

### c.        Supplemental Jurisdiction

As the only claim remaining at this point is the breach of contract claim – a state-law claim – the Court declines to exercise supplemental jurisdiction over that claim.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … (3) the district court has dismissed all claims over which it has original jurisdiction....").  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

---

[9] There is also a question as to whether, even if collateral estoppel should otherwise be applied here, it should be applied to David Henderson, who did not join in his brother's motion to enforce the Stipulated Judgment or the appeal from the denial of that motion.  *See  Henderson*, 140 Conn. App. at 674 n.2.  Resolution of that question, which turns on whether there was "privity" between the two brothers, *see Ventres v. Goodspeed Airport, LLC*, 301 Conn. 194, 206-07 (2011), is unnecessary here.

### B.    Plaintiffs' Motions to Amend the Complaint

As noted above, Plaintiffs have moved to amend the operative complaint to add claims for fraud, conspiracy, and breach of an oral contract.  (Mot. for Leave to Am. Compl.; Mot. for Leave to Am. Compl.)

"Where, as here, a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a), which provides that leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"  *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009) (internal citations and quotations omitted).  "Whether good cause exists turns on the diligence of the moving party."  *Id.* at 335.

Plaintiffs have failed to allege or show that there was good cause for their delay, or that they exercised diligence in moving for leave to amend the operative complaint.  The deadline for filing amended pleadings was February 1, 2012 – more than a year before Plaintiffs' motions.  (*See* Case Management Order [Dkt. # 30].)   Further, Plaintiffs have already amended their complaint twice, and thus Plaintiffs had two opportunities to add these claims and chose not to do so.  Plaintiffs also filed these motions while Defendants' Motion for Summary Judgment, which was filed prior to the deadline set by the Court, was *sub judice*.  Indeed, Plaintiffs' attempt to add allegations of an oral contract appears to be a direct response to Defendants' argument that they are not bound by the written Stipulated Judgment.  Allowing such an amendment would be highly prejudicial to Defendants.  *See Christine Falls Corp. v. Algonquin Power Fund, Inc.*, 401 Fed. App'x 584, 589 (2d Cir. 2010) (where plaintiff sought leave to amend years after the case commenced, well after discovery had closed, and while a summary judgment motion was *sub judice*, the court observed that "our case law makes clear that a proposed amendment is

especially prejudicial and therefore it is well within a district court's discretion to deny a motion for leave to amend." (internal quotations omitted)).

The Court finds that Plaintiffs have failed to show good cause for permitting amendment of the operative complaint at this late stage.  Accordingly, Plaintiffs' Motions for Leave to Amend are DENIED.[10]

### C.    Plaintiffs' Motion to Terminate Stipulated Judgment

Plaintiffs also filed a "Motion to Terminate the 10-Sep-09 Covenant" seeking: (1) termination of the Stipulated Judgment; (2) classification of the Property as "non-conforming adult zoning"; (3) referral of certain individuals to the United States Attorney for criminal prosecution; and (4) disqualification of the law firm Howd & Ludorf, which represents Defendants, from this action and any action related to the same underlying facts.  (Mot. to Terminate the 10-Sep-09 Covenant.)  Plaintiffs' Motion is DENIED as moot.[11]

### D.    Plaintiffs' Motion for Oral Argument

Finally, Plaintiffs moved for oral argument on Defendants' Motion for Summary Judgment.  (Pls.' Mot. for Oral Argument.)  Given the Court's decision, Plaintiffs' Motion for Oral Argument is DENIED as moot.

### III.    Conclusion

Defendants' Motion for Summary Judgment [Dkt. # 90] is GRANTED as to Plaintiffs' constitutional claims against the City and Attorney Moore, GRANTED as to Plaintiffs' breach of contract claim against Attorney Moore, and DENIED as to Plaintiffs' breach of contract claim

---

[10] The Court's decision denying Plaintiffs' Motions for Leave to Amend should not be construed to bar Plaintiffs from asserting any claims they might otherwise be allowed to assert in state court.

[11] The Court also notes that Plaintiffs have failed to demonstrate any grounds for referral to the United States Attorney or disqualification of Defendants' counsel.

against the City.  Plaintiffs' "Motion to Terminate the 10-Sep-09 Covenant" [Dkt. # 74], Motion to Amend the Operative Complaint [Dkt. # 93], Motion for Oral Argument on Defendants' Motion for Summary Judgment [Dkt. # 94], and second Motion to Amend the Operative Complaint [Dkt. # 95] are DENIED as moot.  The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.


Dated:          Hartford, Connecticut
                May 16, 2013